IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELEON PERFECTO[1], | : | |
| Petitioner, | : | 1:19-cv-2012 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| CATRICIA HOWARD, WARDEN, | : | |
| Respondent. | : | |

## MEMORANDUM

### March 1, 2021

Presently before the Court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Perfecto Deleon ("DeLeon"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP") housed at the medium security Federal Correctional Institution at Allenwood ("FCI-Allenwood"), White Deer, Pennsylvania.  He alleges that his due process rights were violated in the context of a disciplinary proceeding.

The petition is ripe for disposition and, for the reasons that follow, will be denied.

---

[1]   According to Respondent, Petitioner's first and last name appear transposed.  Other than in the captions of this Memorandum and the Order that will follow, he will be referred to by his last name, DeLeon.

## I.    BACKGROUND

### A.    BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  *Id.*  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing.  *Id.*  Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits.  28 C.F.R. § 541.3.  In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24

2

hours before the DHO hearing and offer the inmate a full time staff member to represent him at the DHO hearing.  *Id.* at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify.  *Id.* at § 541.8(f).  The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available."  *Id.* § 541.8(f)(2).  The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3).  The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion."  *Id.* § 541.8(e).  The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f).  "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."  *Id.*  The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions.  *Id.* at § 541.8.  The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed.  *Id.* at § 541.8(f)(2).  A copy must be delivered to the inmate. *Id.*

**B.     Incident Report 3233508**

On  March 13, 2019, DeLeon received an incident report charging him with

violating Prohibited Act Code 113, possession of any narcotics, marijuana, drugs,

alcohol, intoxicants, or related paraphernalia not prescribed for the individual by

medical staff.  The incident is described in the following manner:

> On March 12, 2019, at approximately 1730, staff conducted a visual
> search of Inmate Deleon, Perfecto, #90322-053, in the Lieutenant's
> office.  During the search a black latex glove fingertip, packed with an
> unknown substance was recovered, by Inmate Deleon handing the
> object to staff.  Upon further review, the contents of the latex glove
> were pieces of an unknown orange substance, wrapped in cellophane
> and paper.  The Pharmacy Department was contacted on March 13,
> 2019, to visually inspect the orange substance.  On March 13, 2019, at
> 1145, I received confirmation from the Pharmacy Department stating
> the orange colored strips were identified as being Buprenorphine
> 8mg/naloxone 2 mg (Suboxone) film (N8 marking).

(Doc. 9-1, p. 5).

Upon serving the incident report, the investigating lieutenant advised

DeLeon of his rights.  (*Id.* at p. 6).  He stated that he understood his rights,

declined to make a statement, and did not request further investigation or

witnesses.  (*Id.*).  The incident report was referred to the UDC for further

processing.  (*Id.*).

On March 18, 2019, due to the severity of the offense, the UDC referred the

charge to the DHO and provided him with an Inmate Rights at Disciplinary

Hearing, which advised him of his rights to have an available staff member

represent him, to call witnesses, and to present documentary evidence.  (*Id.* at 5, 7).

He declined the offer to call witnesses but opted to have a staff member present to

represent him.  (*Id.* at 7).  He was also informed of his right to make a statement or

remain silent, his right to be present at the hearing, and the right to be advised of

the DHO's decision.  (*Id.*).  He acknowledged the above in executing the Inmate

Rights at Disciplinary form and "Notice  of  Discipline Hearing Before the DHO"

form.  (*Id.* at 6-8).

The DHO held the hearing on April 3, 2019.  (*Id.* at 9).  "At the onset of

[the] hearing, [DeLeon] was advised of his rights before the DHO, indicated he

understood them and stated "[t]he report is true."  (*Id.*).  He opted to waive his

previous request for a staff representative and chose not to call witnesses.  The

DHO also noted that "[n]o procedural issues were cited and no documentary

evidence was provided for consideration."  The DHO noted a delay in the

discipline process due to the report being referred to the FBI-AUSA for criminal

prosecution.  The agency referred the report back for disciplinary proceeding.  The

DHO did not believe this delay infringed upon the inmate's ability to defend

himself against the charged behavior, nor was it addressed it [sic] as an issue."

(*Id.*).

In finding that DeLeon committed the prohibited act as charged, he relied on

the Incident Report and Investigation, a Memorandum from E. Bartlett and H.

Reedy dated March 12, 2019, photographic evidence by R. Kresock dated March 12, 2019, a chain of custody form, and a Memorandum from R. Kresock dated March 13, 2019.  (*Id.* at 10).  The DHO detailed the evidence he relied on in arriving at his decision, including DeLeon's direct involvement in the incident, his statement admitting the veracity of the incident report, and the corroborative evidence provided by various memoranda.  (*Id.*).

In sanctioning him with a disallowance of forty-one days of good conduct time, suspended thirty-day period of disciplinary segregation, loss of phone and visiting privileges, and a monetary fine of $300.00, the DHO reasoned as follows:

> DeLeon's possession of Buprenorphine potentially threatens both the orderly running of the facility and the safety of both staff and inmates. Drug use is preceded by the illicit substance being introduced by breeching the secure perimeter of the institution.  The purchase of drugs tends to lead to debt and drug related debt has the potential to lead to violence in relation to payment/non-payment of the same.  Inmates are the target for this violence and staff have great potential for injury responding to this violence.  Further, being under the influence of drugs limits inmate's ability to be involved in meaningful correctional programming.  Accordingly, the Disallowance of Good Conduct Time is sanctioned to punish [him] for his behavior, while the Loss of Privileges (Phone and Visit), a Monetary Fine and Disciplinary Segregation* (*Suspend 180 Days pending clear conduct) is sanctioned in an effort to deter future misconduct.  The DHO finds the charge for code 113 to warrant the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(*Id*. at 11).

## II.  **DISCUSSION**

DeLeon's claims, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, are properly the subject of this habeas petition because it directly impacts the duration of his confinement.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.  *See Wolff*, 418 U.S. at 564.

DeLeon alleges that the DHO violated his due process rights in failing to explain why his request for laboratory testing of the substance was not honored.

Inasmuch as he believes the laboratory testing may have proven to be exculpatory, the United States Court of Appeals for the Third Circuit has noted that the "[United States Court of Appeals for the] Seventh Circuit ... has held that the rule of *Brady v. Maryland* requiring the disclosure of material exculpatory evidence applies to prison disciplinary proceedings." *Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010) (citing *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981)). However, his argument that he was denied the opportunity to present such evidence, has no support in the record.  There is no indication that he ever made such a request in advance of, or during, the DHO hearing.  *See Laor v. Fed. Bureau of Prisons*, No. 08-3532 (RBK), 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was mot denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied"); *see also Gomez v. Warden FCI Allenwood*, No. 1:20-cv-455, 2020 WL 2556916, at *4 (M.D. Pa. May 20, 2020) (citing *Laor* for the conclusion that the inmate-petitioner's request for video surveillance was not denied because nothing in the record supported the petitioner's assertion that he requested such video).  Further, he declined the invitation to call witnesses and present documentary evidence at the hearing, and withdrew his prior request to have a staff representative present at the hearing.

8

In challenging the sufficiency of the evidence, he argues that he never admitted that the incident report was correct or true.  This statement is belied by the record.  It is clearly documented in the DHO report that he stated "The report is true."  (Doc. 9-1, p. 9).

He also asserts that the incident report "never 'officially' validated that the unknown substance was any substance that could be 'identified' giving the fact that the 'mandated' procedures under Program Statement 6060.08 NARCOTIC IDENTIFICATION KIT: which outlines the procedures for identifying 'unknown substances' and urinalysis was never performed and denied through the whole administrative process."  (Doc. 10, p.2).  We reject this argument on the basis that the purpose and scope of Program Statement 6060.08 is not to identify confiscated drugs.  Rather, it requires that the warden "establish programs of urine testing for drug use, to monitor specific groups or individual inmates who are considered as high risk for drug use, such as those involved in community activities, those with a history of drug use, and those inmates specifically suspected of drug use."  The policy has no application to DHO proceedings.

He also notes that the pharmacist does not train in "forensic toxicology' or "chemical advances", and, even though the pharmacist remarked, based on "visual inspection" a "gas chromatography/Mass Spectrometry (GCMS)" test was not performed on the unknown substance.  (*Id.*).  He points to no BOP policy that

requires such testing be conducted or that indicates that a pharmacist is unqualified to identify drugs. Therefore, to the extent he challenges the procedure in identifying the contraband, the Court finds the professional opinion of the institution pharmacist to be sufficient and capable of being relied upon by the DHO.

In concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the statement made by DeLeon at the DHO hearing, the incident report and investigation, inculpatory memoranda authored by the staff who conducted the visual search, and photographs. This is sufficient to pass constitutional muster. In accordance with *Hill*, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").

## III.   CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate Order will enter.